The relief described hereinbelow is SO ORDERED.

Signed January 09, 2007.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

DON LEE BARKER                                    Case No. 04-21434
a.k.a. Don Barker Enterprises,                          Chapter 7
                        Debtor.

_____

CHRISTOPHER J. REDMOND, TRUSTEE,
                Plaintiff,

        v.                                        Adv. No. 04-6132

MHC FINANCIAL SERVICES, INC., *et al.*,
                Defendants.

_____

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on Motions for Summary Judgment by defendants MHC

Financial Services, Inc. ("MHC"), and Don Lee Barker ("Mr. Barker") (collectively the

"Defendants").[1] MHC and Mr. Barker, who adopts MHC's arguments, seek summary judgment

_____

    [1]  Doc. Nos. 47, 55.

on the trustee's complaint to avoid the transfer of an interest in property pursuant to 11 U.S.C. § 547(b).[2] The Court has reviewed the record and is prepared to rule.

## I. **Factual Background**

The following facts are uncontroverted and relevant to the Court's conclusions:

On January 16, 2004, MHC financed the debtor's purchase of a 2004 Kenworth W900L commercial truck ("Kenworth"). As a component of the sale, the debtor granted MHC a security interest in the Kenworth. MHC provided the debtor with the Manufacturer's Statement of Origin ("MSO") with its lien noted on the back. One day earlier, the State of Kansas Division of Vehicles Motor Carriers Services ("DOV") received a faxed copy of an Apportioned Supplemental Application Schedule C ("Schedule C") for the Kenworth.[3] The Schedule C shows a stamped "received" date of January 15, 2004, and a handwritten "entry" date of January 27, 2004. The faxed copy of the Schedule C was also accompanied by a front-side copy of the MSO with a hand-written notation that MHC held a lien in the Kenworth. After receiving the faxed copy of the front of the MSO and the Schedule C, a DOV employee created a computer log entry on January 15, 2004, allegedly effective to alert other DOV employees to the existence of a paper file on the Kenworth. The computer log entry did not contain information regarding MHC's lien. The DOV issued to the debtor a temporary registration to operate the Kenworth on

---

[2] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All statutory references are thus to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (2004), unless otherwise specified.

[3] A copy of the Schedule C is found in the record. However, it is unclear from the record what purpose, if any, a Schedule C has in relation to the time of perfection. The copy of Schedule C provided in the record makes no provision for the notation of a secured lender's interest in a vehicle. A properly completed and filed Schedule C operates to allow the addition or deletion of vehicles for Kansas registration and for change in equivalent weights in other jurisdictions. The debtor's separate application for Title-Apportioned Registration, if completed and filed, is absent from the record.

07.01.09 Barker Order Denying MSJ.wpd

January 27, 2004, pending the issuance of permanent Kansas based apportioned credentials.[4] The DOV issued an electronic certificate of title reflecting MHC's lien dated February 10, 2004. The debtor filed his petition for Chapter 7 relief on April 9, 2004.

The sales agreement between MHC and the debtor states that the debtor acknowledges the "delivery and acceptance [of the Kenworth]" on the date of the sale (January 16, 2004). However, the debtor and MHC claim the debtor accepted delivery of the vehicle at some later date, but in any event no earlier than January 21, 2004. It is unclear when, if ever, the DOV received from the debtor the original MSO and application for title.

The DOV apparently maintains two computer databases, one for initial intake in which it is impossible to note a lien on a vehicle ("Registration Database") and one which provides for notation of the lien ("Title Database") on the electronic certificate of title. MHC alleges that the faxing of the Schedule C in conjunction with the front page of the MSO is a sufficient application to perfect its lien. This Court is not so convinced since this act only added the Kenworth to the Registration Database. On January 27, 2004, someone may have faxed the front and back of the MSO on which MHC had been typed in as the lienholder.[5] MHC serenades the Court with testimony from DOV employees with regard to when they considered MHC's lien

---

[4] MHC is neither mentioned nor is its lien noted on the temporary registration.

[5] According to the testimony of a DOV employee, Kansas law requires that the DOV maintain a register of all title applications, titles and MSOs, in contrast to which the title database is comprised of those vehicles for which a certificate of title is issued and a lien is noted on the title. Vexingly, not addressed in the arguments of either party is deposition exhibit no. 5 attached to the trustee's deposition transcript, a copy of the front and back of the original MSO. The back of the MSO reflects debtor's purchase of the Kenworth on January 16, 2004, and also notes MHC as the first lienholder. A notation on the first of these two pages indicates they were faxed on January 27, 2004, to the attention of "Wanda." Otherwise, the copy does not indicate by whom, to whom, or for what purpose the facsimile was transmitted. MHC asserts that Wanda Knight is the DOV employee in question. The noted date of the transmission does coincide with the date on which Wanda Knight asserts that she initiated the process to add the Kenworth to the DOV Title Database. Left unanswered is what original application MHC actually sent to the DOV, and what happened to the original MSO.

07.01.09 Barker Order Denying MSJ.wpd

"recorded." However, MHC's lien was not perfected until the Kenworth was added to the Title Database and MHC's lien noted. Placement of the Kenworth into the Registration Database did not reflect the existence of the lien. Although DOV employees regularly referred to a lien as "recorded" after the initial paperwork was received on January 15, 2004, this is a lay person's understanding of the internal workings of the DOV and is not determinative as to if and when a lien in a vehicle is perfected under the U.C.C.

Allegedly, if someone contacted the DOV with regard to the Kenworth prior to issuance of a title, the Registration Database functions to alert DOV personnel that there is paperwork associated with a particular vehicle and that DOV employees need to find this paperwork for the vehicle. In the case of the Kenworth, if someone had called the DOV for lien information, an employee allegedly would indicate that MHC held a lien on the Kenworth. It appears that it is this status to which the DOV employees refer when the term "recorded" is used. However, this status does not constitute perfection of a lien in the vehicle. Even in this area, the testimony of the DOV employees is inconsistent. Wanda testified that Kansas law requires that the DOV wait for 20 days to issue a title to allow a creditor to file a lien on a vehicle. In contrast, the testimony of DOV employee Phyllis Diane Pahmahmie is that if there is a lien noted on the back of the original MSO, the DOV will process the application immediately to title the vehicle and note a lien on the electronic title; otherwise, it is the DOV's policy to wait 21 days if lien information is not provided with the original application.[6] Wanda testified that the date the title was issued was not necessarily the same date as receipt of the original application for title; however, this leaves

_____

[6] If it is indeed the policy of the DOV to wait for 21 days before issuance of a title, then any lender who finances the purchase of a motor vehicle and does not file an NOSI does so at considerable peril to the timely perfection of its security interest.

- 4 -

unanswered when the original application and MSO were received by the DOV.   Regardless, the

DOV employees' testimonies and beliefs as to when a lien is "recorded" do not establish MHC's

legal conformity with the applicable law regarding perfection of its lien.

The DOV issued a temporary authority to the debtor to operate the vehicle from

January 27, 2004, through February 7, 2004, one assumes pending the DOV's receipt of the

original title documents.  Testimony is that the DOV would not have processed the Kenworth

into the Title Database without receipt of the original paperwork.  The debtor was also billed for

taxes on the Kenworth on January 27, 2004.  The Kansas electronic title receipt, which

presumably would finally place the Kenworth into the Title Database with lien information to

reflect MHC's lien interest, shows an application date of February 10, 2004, and an issue date of

February 10, 2004.  The DOV employees testified that the issue date is the date the DOV

actually enters or runs the title for the Kenworth.  The application date is procured from the

carrier (debtor).  Both of these dates are filled in by DOV employees, although Wanda

perplexingly also testified in her deposition that the February 10, 2004, date does not have any

relationship to the real processing.  It is this Court's supposition that she is referring to

documents that were received by the DOV on January 15 and 27, 2004.[7]

This Court cannot ascertain via the motion for summary judgment and attendant

memoranda what formal application was made by MHC, what constituted this formal

application, and when it was delivered and received by the DOV.  There also exists a genuine

---

[7]   The foregoing facts were gleaned from a partial copy of Wanda Knight's deposition attached to MHC's
motion for summary judgment and memorandum in support thereof.  The transcript is incomplete and does not provide
the Court with all of the information necessary to render a decision, and is at times internally conflicting and impossibly
vague to be of much utility to this Court.  The Court was only able to glean the above allegations of fact after a detailed
review of the transcript.

07.01.09 Barker Order Denying MSJ.wpd

issue of material fact with regard to the actual date of possession of the Kenworth by the debtor in that the debtor's affidavit is inconsistent with the language in the contract he signed. It is necessary that this Court hear the debtor's testimony in this regard to ascertain his credibility. This Court is confounded in its efforts to ascertain what documents were delivered to the DOV that constitute a formal title application and what event triggered the DOV's initiation of the titling process. It seems that MHC employed a mish-mash of procedures that have yet to establish the timely perfection of its lien in the Kenworth. Of course, none of this would be necessary if MHC had undertaken the simple, efficient and cost-effective procedure to file a notice of security interest. It is only because MHC is blessed with competent counsel that the specter of timely and proper perfection remains an elusive but potentially obtainable finding by this Court.

## II. <u>Discussion</u>

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. In articulating the standard of review for summary judgment motions, Rule 56 provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, and admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law.[8] In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing the summary judgment.[9] An issue is "genuine" if sufficient evidence exists on each

---

[8] FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056.
[9] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).

- 6 -

side "so that a rational trier of fact could resolve the issue either way" and an issue "is 'material' if under the substantive law it is essential to the proper disposition of the claim."[10]

The trustee seeks to avoid MHC's interest in the Kenworth as a preference under § 547(b). If he is to prevail on his complaint, the trustee must prove by a preponderance of the evidence five elements prescribed by § 547(b) regarding the transfer of the debtor's property:

    (1)    A transfer was made for the benefit of a creditor;
    (2)    on account of an antecedent debt;
    (3)    while the debtor was insolvent;
    (4)    on or within 90 days before the date of filing; and
    (5)    that enabled the creditor to receive more than it would have in a chapter 7 liquidation had this transfer not been made.[11]

However, the Bankruptcy Code in § 547(c)(3) provides a safe harbor that prevents a trustee from avoiding transfers that create a purchase money security interest that is perfected within 20 days after the debtor receives possession of the property sold. This is commonly referred to as the enabling loan exception.[12]

The defendants are entitled to summary judgment if the uncontroverted facts establish that the trustee cannot prove any one of the five elements prescribed by § 547(b) or that the transfer at issue is protected by the enabling loan exception. Here, the defendants do not contest that the creation of MHC's security interest in the Kenworth was a transfer of the debtor's property made for the benefit of MHC or that the transfer was on account of an antecedent debt. Further, the defendants do not contest that the debtor was insolvent.[13] The creation of MHC's

---

[10]   *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[11]   11 U.S.C. § 547(b). The trustee has the burden to prove the avoidability of a transfer under this subsection. See 11 U.S.C. § 547(g).

[12]   MHC has the burden to prove the non-avoidability of the transfer under this subsection. *See* 11 U.S.C. § 547(g).

[13]   Section 547 (f) provides that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

07.01.09 Barker Order Denying MSJ.wpd

security interest in the Kenworth occurred on or within 90 days of the debtor's filing and MHC's security interest enables it to receive more than it would in a Chapter 7 liquidation had the transfer never occurred. The primary consideration before the Court, then, is whether the enabling loan exception of § 547(c) applies. In other words, was MHC's security interest in the Kenworth perfected within 20 days after the debtor received possession thereof?

For the purposes of § 547, a transfer of property other than real property "is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."[14] In order to determine whether a party's interest in property has been perfected, the Court must look to state law, which creates and defines an interest in property.[15] In Kansas, Revised Article 9 of the Uniform Commercial Code governs secured transactions and provides, with certain inapplicable exceptions, that a security interest is subordinate to the rights of a person who acquires a judicial lien before the security interest is perfected.[16] In this case, because the Kenworth is subject to Kansas certificate-of-title law, MHC's secured interest was only perfected if MHC complied with Kansas law governing the perfection of a security interest in goods covered by a certificate of title.[17] If MHC failed to take all of the steps required under Kansas certificate of title law necessary to perfect its security interest in the Kenworth within 20 days of the date the debtor took possession thereof, then it may not avail itself of the safe harbor provided by the Bankruptcy Code and the trustee will prevail.

### A. Perfection of purchase money security interests in vehicles subject to Kansas Certificate of Title Law is governed by K.S.A. § 8-135(c)(5).

---

[14] 11 U.S.C. § 547(e)(1)(B).

[15] *Bryant v. JCOR Mech., Inc. (In re Electron Corp).*, 336 B.R. 809, 811 (B.A.P. 10th Cir. 2006) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).

[16] K.S.A. § 84-9-317(a) (Supp. 2004); K.S.A. § 84-9-102(52) (Supp. 2004).

[17] K.S.A. § 84-9-311 (Supp. 2004).

07.01.09 Barker Order Denying MSJ.wpd

The Interstate Commerce Act applies to the perfection of liens in commercial vehicles, but in doing so, it defers to the state's certificate of title law and the laws of the state in which the certificate of title is issued. The Federal Motor Vehicle Lien Act of 1958 establishes that for vehicles subject to the Interstate Commerce Act, lenders may perfect a lien by notation of the lien on a certificate of title issued in one state.[18] Clark goes on to comment that with commercial vehicles, other matters "will presumably continue to be governed by Article 9."[19] It appears that even though the vehicle in question is a commercial truck, perfection of a lien in this collateral is the same as that for any other motor vehicle with a certificated title. Since perfection is controlled by the laws of the state that issued the certificate, this Court will conduct its inquiry regarding perfection under Kansas law. It is the interplay between the certificate of title laws and Article 9 in which Clark encourages courts to construct "a seamless web" when such construction does not violate the plain reading of the applicable title law.[20] Hence, notation of the lender's lien on the vehicle's title of registration is the means to perfect such interest. Clark comments that in a parallel to the treatment of financing statements, "Revised Article 9 makes it clear that a vehicle becomes covered by a certificate of title 'when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority.'"[21]

Beginning in 2003, the DOV was required by statute to issue and retain electronic certificates of title when an assignment of title or MSO indicates a lien or if a notice of security

---

[18]  1 BARKLEY CLARK & BARBARA CLARK, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE ¶ 1.08[1][b] and ¶ 2.08[2] n.313 at 2-124 (rev. ed. 2005), the latter paragraph citing to 49 U.S.C. § 14301.

[19]  *Id.*, ¶ 1.08[1][d] at 1-153.

[20]  2 BARKLEY CLARK & BARBARA CLARK, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE ¶ 15.02[1] (rev. ed. 2005).

[21]  *Id.*, ¶ 15.03[1] at 15-22.

- 9 -

07.01.09 Barker Order Denying MSJ.wpd

interest ("NOSI") is filed.[22]  While the advent of an electronic title is a relatively recent

occurrence, substantive provisions of Kansas law governing perfection were not repealed by the

change.[23]  Under Kansas law, the perfection of a purchase money security interest ("PMSI"),[24]

such as MHC's interest in the Kenworth, is found in K.S.A. § 8-135(c), which provides that

perfection occurs in one of two ways: (1) by having the lien properly noted on a certificate of

title that is duly filed; or (2) by the proper completion and timely mailing or delivery of an

NOSI.[25]  This statutory scheme, when properly employed, allows the creditor to ensure its

---

[22] K.S.A. § 8-135d(a) (Supp. 2004).

[23] *Id.* ("The provisions of article 1 of chapter 8 of the Kansas Statutes Annotated, and amendments thereto, shall apply to an electronic certificate of title, except as otherwise provided by statute or by rules and regulations adopted pursuant to subsection (b).")

[24] MHC has a PMSI "[t]o the extent that the [Kenworth is] purchase-money collateral with respect to [MHC's] security interest.")  K.S.A. § 84-9-103(b)(1) (Supp. 2004).

[25] Prior to the adoption of Revised Article 9, and with it K.S.A. § 84-9-311(Supp. 2004), perfection of a security interest in a vehicle was governed by K.S.A. § 84-9-302(3), which provided:

A security interest in:

....

(c) a vehicle ... subject to a statute of this state which requires indication on a certificate of title or a duplicate thereof of such security interests in such vehicle:
Can be perfected only by presentation, for the purpose of such registration or such filing or such indication, of the documents appropriate under any such statute to the public official appropriate under any such statute and tender of the required fee to or acceptance of the documents by such public official, or by the mailing or delivery by a dealer or secured party to the appropriate state agency of a notice of security interest as prescribed by K.S.A. 8-135, and amendments thereto.  Such presentation and tender or acceptance, or mailing or delivery, shall have the same effect under this article as filing under this article, and such perfection shall have the same effect under this article as perfection by filing under this article."  K.S.A. § 84-9-302(3) (Supp. 1996).
As the comment to K.S.A. § 84-9-302 (Supp. 1996) and case law make clear, Kansas law governing perfection by the notation of a lien on a certificate of title is found in K.S.A. § 8-135.  *Charles v. CIT Group/Equipment Fin. (In re Charles),* 323 F.3d 841, 843 (10th Cir. 2003) ("[T]here are two alternative ways that a secured creditor on a motor vehicle can perfect its security interest: (1) by having its lien noted on the certificate of title which is then duly filed, or (2) by filing a 'notice of security interest.'" (citations omitted)); *Mid American Credit Union v. Board of County Comm'rs of Sedgwick County,* 15 Kan. App. 2d 216, 223, 806 P.2d 479, 484 (1991) ("The lien must be noted on the certificate of title to be perfected. . . .While notifying the KDR of a security interest is a method of perfecting a lien on a vehicle, it is only meant to perfect the lien until the certificate of title is issued."*); Beneficial Finance Co. of Kansas, Inc., v. Schroeder,* 12 Kan. App. 2d 150, 151, 737 P.2d 52, 53 (1987) ("[A] security interest in a vehicle may be perfected by noting its existence on the vehicle's certificate of title, or by mailing or delivering notice of the security interest to the Division of Motor Vehicles.").

Although K.S.A. §84-9-302 was effectively replaced when Kansas adopted the Revised Article 9 by K.S.A. § 84-9-311, the material provisions of K.S.A. § 8-135 and, accordingly, Kansas law governing the perfection of a security interest in a vehicle remain unchanged.  *Accord Davis v. Charlies Cars, Inc. (In re Cruth),* 332 B.R. 16, 18 (Bankr. D. Kan. 2005) (Nugent, C.J.) ("The Kansas Uniform Commercial Code provides that compliance with the applicable titling statute, here <u>Kan. Stat. Ann. § 8-135</u>, is the equivalent of filing a financing statement.").

07.01.09 Barker Order Denying MSJ.wpd

interests are properly protected.

Because purchasers do not always timely perform their contractual and statutory duties, Kansas has afforded creditors the opportunity to protect their interests by timely completing and executing an NOSI that must be mailed or delivered to the DOV within 20 days of the sale and delivery of the vehicle.[26] The DOV retains the NOSI pending receipt of an application for secured title. Receipt of the application by the DOV triggers the issuance of the electronic certificate of title with the lien noted thereon.[27] The proper completion and timely mailing of the NOSI serves to perfect the secured interest from the date the NOSI was mailed or delivered until the certificate of title issues with the lien noted thereon. Should a creditor otherwise fail or choose not to file an NOSI, its secured interest in a vehicle is not perfected until the DOV issues an electronic title with the creditor's lien duly noted.[28]

The Kansas Court of Appeals has twice considered perfection pursuant K.S.A. § 8-135(c)(5) in a context relevant to this proceeding. Both cases support the foregoing analysis. In the later of the two cases, *Mid American Credit Union v. Board of County Commissioners of Sedgwick County,*[29] the court, relying in part on *Beneficial Finance Company of Kansas, Inc. v. Schroeder,*[30] concluded that "[a] lien must be noted on the certificate of title to be perfected."[31] The court in *Mid American Credit Union* made clear that a creditor may file an NOSI to perfect its secured interest "until the certificate of title is issued."[32] Absent the filing of an NOSI,

---

[26] K.S.A. § 8-135(c)(5) (Supp. 2004).

[27] *Id.*; K.S.A. § 8-135d (Supp. 2004).

[28] K.S.A. § 8-135(c) (Supp. 2004).

[29] 15 Kan. App. 2d 216, 223, 806 P.2d 479, 484 (1991).

[30] 12 Kan. App. 2d 150, 737 P.2d 52 (1987).

[31] 15 Kan. App. 2d at 223, 806 P.2d at 484.

[32] *Id.* (citing *Beneficial Finance*, 12 Kan. App. 2d at 151, 737 P.2d at 52).

- 11 -

07.01.09 Barker Order Denying MSJ.wpd

Kansas law provides that issuance of a certificate of title and notation of the lender's lien thereon is the trigger for perfection. This Court has not been convinced otherwise as the statements in the two Kansas Court of Appeals decisions are clear. If this is in fact the determinative point in time for perfection, then this test would render irrelevant the date on which proper application for a certificate of title was received by the DOV. In *Mid-American Credit Union*, the court states:

> The federal courts have interpreted this statute differently, finding that listing the lien on the title is not necessary to perfect the interest. *In re Littlejohn*, 519 F.2d 356 (10th Cir. 1975). There, the Tenth Circuit Court of Appeals relied on the language in K.S.A. 84-9-302 which requires the documents only be 'tendered' to perfect the interest.[33]

The holding in *In re Littlejohn* was subsequently abandoned by the 10th Circuit because Kansas law now provides a simple and effective mechanism for the creditor to protect its lien in a motor vehicle.[34] The purpose of the NOSI is to provide a creditor protection until the title with the lien noted thereon is applied for and issued. The effect is to give the secured party perfection on the vehicle upon mailing or delivery of the "notice of security interest."[35] Perfection of a lien must be effected in accordance with Kansas certificate of title statutes.

Although Judge Nugent's decision in *Morris v. Intrust Bank, N.A. (In re Anderson)*, pertains to the perfection of a non-purchase money security interest in a motor vehicle, the observations in that case ring true with regard to the perfection of a purchase money security interest:

---

[33] *Mid-American Credit Union*, 15 Kan. App. 2d at 223.

[34] *Lentz v. Bank of Independence (Matter of Kerr)*, 598 F.2d 1206, 1209 (10th Cir. 1979). "[W]e now abandon the rule announced in Commerce Bank [*In re Littlejohn*]."

[35] *Id.* at 1208 n.1, quoting in part from Clark, *The New UCC Article 9 Amendments*, 44 J.K.B.A. 131, 178 (1975).

Official Comment 5 to revised § 84-9-311 is telling, noting that "interplay of this section with certain certificate-of-title statutes may create confusion and uncertainty. . . . Accordingly, the Legislative Note to this section instructs the Legislature to amend the applicable certificate of title statutes to provide the perfection occurs upon receipt . . . of a properly tendered application for a certificate of title on which the security interest is to be indicated." For whatever reason, the Kansas legislature has, so far, declined to follow this "instruction" of the drafters. It is not for this Court to legislate that change, however wise or advisable it may be.[36]

It may be failure to enact such legislation that creates a fissure in the "seamless web" regarding perfection of the security interest in a motor vehicle to which Clark refers in his learned treatise.[37]

Unless other persuasive data convinces it that the state's highest court would answer the question differently, this Court must follow a decision by the Kansas Court of Appeals.[38] The arguments advanced by MHC fail to convince this Court that the Kansas Supreme Court would reach a different conclusion than the Kansas Court of Appeals. This Court agrees with the analysis employed by the Kansas Court of Appeals and the analysis outlined above. An NOSI that is properly completed and mailed or delivered serves as the sole means under Kansas law to perfect a PMSI between the time of delivery of the secured goods and the time of issuance of the certificate of title with the lien noted thereon.[39]

MHC's attempts to persuade the Court to disagree with the Kansas Court of Appeals and circumvent the plain language of K.S.A. § 8-135(c)(5) fail for the reasons set forth below.

1.      **K.S.A. § 8-135d does not provide an alternative means of perfecting a PMSI in a vehicle.**

---

[36]   351 B.R. 752, 757 (Bankr. D. Kan. 2006) (footnotes omitted).

[37]   Clark, *supra* note 20.

[38]   *In re Reed*, 147 B.R. 571, 573 (D. Kan. 1992) (citing *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989); *Jordan v. Shattuck Nat. Bank*, 868 F.2d 383, 386 (10th Cir. 1989)).

[39]   *See also In re Cruth*, 332 B.R. at 19 (compiling cases).

- 13 -

MHC contends that K.S.A. § 8-135d, which provides for the creation and retention of electronic certificates of title, somehow supercedes K.S.A. § 8-135(c)(5) and creates an alternative means of perfection. MHC's contention is perplexing because K.S.A. § 8-135d addresses only the creation of electronic certificates of title, makes no mention of perfection, and explicitly states that "[t]he provisions of article 1 of chapter 8 of the Kansas Statutes Annotated [*e.g.*, § 8-135(c)(5)], and amendments thereto, shall apply to an electronic certificate of title, except as otherwise provided by statute or by rules and regulations adopted pursuant to subsection (b)." While subsection (b) of K.S.A. § 8-135d provides that the Kansas Secretary of Revenue is authorized to adopt rules and regulations to enforce the section, MHC fails to provide an official citation to such regulations and this Court's research has uncovered none.[40] Nothing supports the notion that K.S.A. § 8-135(c)(5) has been superceded by K.S.A. § 8-135d or that K.S.A. § 8-135d provides an alternative means to perfect a PMSI in a vehicle.

> **2.** **Delivering via facsimile the documentation needed to trigger the issuance of a certificate of title to the DOV does not perfect a PMSI in an automobile under Kansas law.**

MHC describes the Supreme Court's decision in *Fidelity Financial Services, Inc., v. Fink*,[41] as "[p]robably the most compelling decision" warranting summary judgment in favor of the defendants. MHC cites *Fidelity* for the proposition that perfection occurs when a state official acknowledges receipt of the documentation necessary to trigger perfection. Carefully read, the Supreme Court's opinion in *Fidelity* belies MHC's assertion. In *Fidelity*, the Supreme

---

[40] As noted above, MHC has provided depositions of DOV employees describing the DOV's internal procedures. MHC implies that the DOV's internal procedures rise to the level of the regulations described in K.S.A. § 8-135d or are determinative as to when perfection occurs. The Court disagrees.

[41] 522 U.S. 211 (1998).

- 14 -

Court concluded that "a transfer of a security interest is 'perfected' under § 547(c)(3)(B) on the date that the secured party has completed the steps necessary to perfect its interests."[42]  However, the Supreme Court clarified that in addressing acts necessary to perfect a security interest under state law, it meant "whatever acts must be done to effect perfection under the terms of the applicable state statute, whether those be acts of a creditor or acts of a governmental employee delivering or responding to a creditor's application."[43]  Kansas law is that MHC could have perfected its interest in the Kenworth only by delivering or mailing a properly completed NOSI that would have served to perfect MHC's interest until a certificate of title issued or, alternatively, upon the receipt by the DOV of a *proper application* for certificate of title that noted MHC's lien thereon and issuance of the electronic certificate of title thereafter with the lien noted.

Despite MHC's contention otherwise, the faxed front-side copy of the Kenworth's MSO with a hand-written notation that MHC held a lien on the Kenworth is not the proper means for applying for a certificate of title.  Further, there is nothing in the record that establishes when, if ever, the DOV received the properly completed official forms necessary to trigger the issuance of a certificate of title with MHC's lien noted thereon.  Whether the DOV received a properly completed application for certificate of title remains a genuine issue of material fact to be resolved at trial.

Simply stated, "[w]hen the law provides a simple and inexpensive way to protect the lien the creditor should be required to use it."[44]  The Kansas legislature has provided a simple,

---

[42] *Id.* at 212-13.

[43] *Id.* at n.1.

[44] *Lentz v. Bank of Independence* (*In re Kerr*), 598 F.2d at 1209.

07.01.09 Barker Order Denying MSJ.wpd

inexpensive mechanism for a creditor to protect its interest in a vehicle. A creditor that chooses not to file an NOSI does so at its own peril. MHC chose not to file an NOSI and the certificate of title reflecting its lien in the Kenworth did not issue until more than 20 days after the date of the underlying sale. Because questions of fact remain as set forth above, the defendants are not entitled to summary judgment.

### B.  The Substantial Compliance Doctrine

In *In re Charles*, the Tenth Circuit predicted that the Kansas Supreme Court would adopt a substantial compliance standard for motor vehicle certificates of title.[45] Under the substantial compliance doctrine, a creditor is deemed perfected if its filing or, as is the case here, a certificate of title give notice of the secured party's interest to other potential secured creditors.[46] For example, in *Charles*, the Tenth Circuit affirmed the lower court's conclusion that certificates of title that were issued with the lien holder identified as the owner of the vehicle gave sufficient notice to any potential secured creditors that another lender might have a superior interest in the collateral.[47] In other words, should the debtor have attempted to offer the vehicle in question as collateral, any potential lender would have been put on notice after reviewing the certificates of title, which did not show the debtor as the vehicles' owner, that the vehicles might already be encumbered by another lender.

However, the substantial compliance doctrine has not been extended to filing requirements.[48] Failure to timely file the properly completed documents necessary to trigger the

---

[45]  323 F.3d at 846.

[46]  *Id.* at 845.

[47]  *Id.* at 845-46.

[48]  *Yamaha Motor Co. v. Perry Hollow Mgmt. Co. (In re Perry Hollow Mgmt. Co.)*, 297 F.3d 34, 40 (1st Cir. 2002) (citations omitted).

- 16 -

issuance of a certificate of title with the lien holder noted thereon fails to give proper notice that a secured interest exists. Here, the record does not reveal when, if ever, the DOV received original copies of the documents necessary to trigger the issuance of a certificate of title on the Kenworth. Further, even if the substantial compliance doctrine extends to filing requirements, MHC has not established substantial compliance. The Kansas legislature adopted the NOSI as the sole means for secured creditors to protect their interests in vehicles between the date of delivery and the date of issuance of certificates of title. The doctrine of substantial compliance should not shield a creditor that fails to avail itself of the protections provided by the simple, inexpensive act of filing an NOSI.

### III.  Conclusion

MHC is not entitled to judgment on its motion. There is a vacuum of information this Court considers necessary with regard to the assertion of the enabling loan exception by MHC. For instance, this Court does not have information as to whether and when a formal application regarding the Kenworth was tendered to the DOV or what happened to the original MSO with regard to the Kenworth. Proper lien perfection by MHC is not divined by the testimony of DOV employees as to when they believe a lien is perfected with regard to a particular motor vehicle, but is established by adherence to the pertinent perfection statutes. MHC must demonstrate proper and timely perfection of its lien as contemplated under the safe harbor of § 547(c)(3), which it has yet to accomplish. It is this Court's belief that Kansas law provides that perfection of a purchase money lien in a motor vehicle, absent the filing of an NOSI, occurs when the electronic title and notation of the lender's lien thereon issues and not when the proper paperwork is tendered to the DOV.

- 17 -

07.01.09 Barker Order Denying MSJ.wpd

IT IS THEREFORE ORDERED that the Motions for Summary Judgment by MHC and Mr. Barker are hereby DENIED.

IT IS FURTHER ORDERED that the trustee's complaint will be set forthwith by separate order for evidentiary hearing.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

07.01.09 Barker Order Denying MSJ.wpd

Case 04-06132    Doc# 76    Filed 01/09/07    Page 18 of 18